2024 IL App (1st) 230938-U
Order filed: June 6, 2024

FIRST DISTRICT
FOURTH DIVISION

No. 1-23-0938

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| TERRY AINSWORTH, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff and Counterdefendant-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2018 CH 1898 |
| | ) | |
| JIDD ENTERPRISES, LLC, | ) | |
| | ) | Honorable |
| Defendant and Counterdefendant-Appellant | ) | James L. Allegretti, |
| | ) | Judge, presiding. |
| (BMW Financial Services NA, LLC, | ) | |
| d/b/a Alphera Financial Services, | ) | |
| | ) | |
| Defendant and Counterplaintiff-Appellee). | ) | |

_____

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justices Martin and Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Judgments and attorney fees awarded to plaintiff and counterplaintiff affirmed, where plaintiff presented evidence of actual damages proximately caused by defendant's violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

¶ 2    Defendant and counterdefendant-appellant, Jidd Enterprises, LLC (Jidd), appeals from judgments and attorney fees awarded to plaintiff and counterdefendant-appellee, Terry Ainsworth, and defendant and counterplaintiff-appellee, BMW Financial Services NA, LLC, d/b/a Alphera

Financial Services (BMW), as well as from the denial of its motion to reconsider. For the following reasons, we affirm.

¶ 3 Plaintiff initiated this action in 2018 by filing a pleading in the chancery division of the circuit court, seeking to compel Jidd to participate in arbitration proceedings to settle a dispute after Jidd purportedly improperly refused to do so despite a binding arbitration agreement contained in the automobile purchase contract executed by the parties. The pleading also included a claim that Jidd's refusal to participate in arbitration constituted a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Act) (815 ILCS 505/2 (West 2018)), and in addition to declaratory relief plaintiff sought to recover damages for Jidd's failure to arbitrate. After some preliminary motions and litigation, this matter was transferred to the law division and plaintiff was granted leave to file an amended complaint adding BMW as a named defendant.

¶ 4 The operative second amended complaint was filed on January 28, 2019. Therein, plaintiff generally alleged that on October 12, 2017, he purchased a used 2013 model-year BMW automobile from Jidd at its dealership in Des Plaines, Illinois. Plaintiff alleged that on that day he and Jidd agreed on a price for the 2013 BMW of $37,727.15, and a value of $3,000 for the 2010 model-year BMW vehicle plaintiff was trading in to Jidd as part of the transaction. Plaintiff would pay $9,500 as a deposit, and the remaining $13,038.64 that plaintiff still owed to BMW on the 2010 BMW would be refinanced and included in the new transaction. The final, remaining amount due of $41,365.92 was to be financed by a 72-month loan with an annual percentage rate of 11.39%.

¶ 5 Attached to the complaint were several documents executed by plaintiff and Jidd formalizing this agreement, including a purchase contract, a finance contract, an arbitration agreement, and a rider, buyer's guide and other documents repeatedly indicating that the 2013

BMW was being sold "AS-IS" with no warranty. Nevertheless, Jidd did provide plaintiff with a "30 Day Satisfaction Guarantee" as part of the transaction, pursuant to which plaintiff could return the 2013 BMW to Jidd within 30 days, subject to several conditions which included having driven the vehicle less than 1,000 miles. The complaint alleged that the parties intended that the finance contract would be sold and assigned by Jidd to BMW.

¶ 6     Having completed the purchase, plaintiff left his 2010 BMW with Jidd and drove home to Iowa in the 2013 BMW. According to the complaint, however, several things about the transaction then began to concern plaintiff.

¶ 7     As relevant to this appeal, the complaint first noted that Jidd attempted to have plaintiff sign a second and a third contract, under the false pretenses that the first contract was "not approved by the banks," and the second contract was "no good." Additionally, Jidd failed to pay off the prior loan on the 2010 BMW plaintiff traded in within 21 days of the transaction, in violation of section 2ZZ of the Act. 815 ILCS 505/2ZZ (West 2018). The complaint also complained that the contractual documents executed by the parties were "fundamentally confusing" and in violation of section 2L of the Act. *Id.* § 2L (West 2018). More specifically, plaintiff complained that those documents repeatedly indicated that the 2013 BMW was sold "AS IS, NO WARRANTY," while section 2L of the Act required that the vehicle be sold with a 15-day, 500-mile implied warranty of merchantability that the "vehicle functions for the purpose of ordinary transportation on the public highway and substantially free of a defect in a power train component."

¶ 8     As a result of these and other issues identified in the complaint, plaintiff provided written notice to Jidd that he wanted to return the vehicle and desired "a complete unwinding of the transaction." When Jidd failed to respond to this request, plaintiff returned the 2013 BMW to Jidd. At that point, "[i]nstead of canceling the transaction and returning Plaintiff's trade-in, Defendant

refused to return his trade-in, and allowed the car to be repossessed, sold, and a deficiency be assessed against Plaintiff." Plaintiff thereafter attempted to initiate arbitration proceedings pursuant to the arbitration agreement contained in the documents executed by the parties as part of the transaction. Pursuant to the arbitration agreement, Jidd was responsible for paying plaintiff's filing fee for arbitration. However, due to Jidd's prior failure to comply with several of the appointed arbitrator's policies, the arbitrator declined to administer plaintiff's claim against Jidd. The arbitrator's written notice to plaintiff and Jidd of this decision stated that, since it was declining to administer an arbitration, "either party may choose to submit its dispute to the appropriate court for resolution." Plaintiff filed this suit shortly thereafter.

¶ 9 Plaintiff's operative complaint stated two separate claims based upon these facts. In count I, plaintiff sought declaratory relief and asked the court to declare the transaction with Jidd "void or voidable (and that [plaintiff] rightfully exercised his right to void it)" due to, *inter alia*, Jidd's violation of sections 2ZZ and 2L of the Act. In count II, defendant again alleged that Jidd, *inter alia*, violated sections 2ZZ and 2L of the Act. Count II then stated that the: "above-described conduct proximately damaged Plaintiff at the very least in the amount of his filing fee, which he would not have had to pay under the arbitration agreement, in the amount of the deficiency (approximately $29,000) which was assessed against him as a proximate result of Jidd's deceptive and unfair conduct, other incidental and consequential damages, aggravation and inconvenience, and punitive damages as the Court may allow." Both counts were directed at Jidd, and were also directed at BMW, derivatively, as it was now the holder of the assigned finance contract.

¶ 10 On June 5, 2020, BMW filed a counterclaim against plaintiff and Jidd. Therein, BMW alleged that only a single monthly payment had been made on the finance contract for the 2013 BMW executed by plaintiff and Jidd and subsequently assigned to BMW. As such, the 2013 BMW

had been repossessed and sold at auction, leaving a deficiency of $28,300.11 still due and owing to BMW under the contract. In count I of the counterclaim, BMW asserted a claim of breach of contract against plaintiff and contended that if "the Contract entered into between Mr. Ainsworth and Jidd is valid and enforceable, Mr. Ainsworth is in breach of the same and [BMW] is entitled to judgment against him *** in the amount of $28,300.11 for the full amount due together with reasonable attorneys' fees, costs, and expenses incurred by BMW." Count II was also a breach of contract claim and was pleaded against Jidd, in the alternative, and asserted that should a judgment be entered "in favor of Mr. Ainsworth on all or part of his causes of action, then said Contract was not validly entered into, nor had the Property been accepted by Mr. Ainsworth at the time of the assignment to [BMW], and Jidd is therefore in breach of the Contract with [BMW], making it liable to [BMW] for contractual damages of $28,300.11 *** for the full amount due together with reasonable attorneys' fees, costs, and expenses incurred by BMW." The claimed deficiency was later reduced to $22,300.01.

¶ 11    The matter proceeded to a bench trial in June of 2022. The exhibits entered into evidence at trial are included in the record on appeal, while the trial proceedings are set forth in a Bystander Report that was certified by the trial court on September 18, 2023, and filed on September 25, 2023, pursuant to Illinois Supreme Court Rule 323(c) (eff. July 1, 2017). According to this report, the witnesses at trial included: (1) plaintiff, (2) Adam Jidd, the owner of Jidd, (3) Thomas Wessel, Jidd's Finance Director, and (4) Shellie Koch, a BMW "Team Leader who supervises 10 employees and performs collections analysis for BMW." We need not detail all the testimony and trial court proceedings set out in the bystander report to resolve this appeal, as it is sufficient to note the following.

¶ 12    In general, the testimony at trial confirmed the basic allegations regarding the initial sale of the 2013 BMW to plaintiff, including the contract terms. However, after the initial transaction was executed, there was a delay in BMW's acceptance of the assignment of the finance agreement and its funding of the loan. The evidence at trial indicated that this delay was initially caused by BMW misplacing the paperwork sent to it by Jidd. Nevertheless, Wessel testified at trial that the finance agreement was " 'mine' (the dealership's) until it was sold to a bank." That sale and assignment did not occur until November 20, 2017. Jidd did not pay off the existing lien on the 2010 BMW plaintiff traded-in as part of the transaction until the following day.

¶ 13    Plaintiff testified that due to the lien on the 2010 BMW not being timely paid: (1) he was unable to register the license plates transferred from the 2010 BMW to the 2013 BMW in Iowa, and (2) "he began receiving harassing collection phone calls and bills from [BMW]" with late charges. The bystander report also reflects that the trial court's notes from plaintiff's testimony indicated that the failure to timely pay off the lien on the 2010 BMW also resulted in a "detriment" to plaintiff's credit rating, although Koch testified that BMW imposed no fine or penalty due to the delay.

¶ 14    Plaintiff thereafter contacted an attorney, and on November 26, 2017, a demand letter from plaintiff's attorney was sent to Jidd requesting to cancel the transaction based, in part, on the failure to timely pay off the lien on the 2010 BMW. Obtaining no response to that letter, plaintiff returned the 2013 BMW to Jidd on November 30, 2017. Notably, plaintiff had driven the vehicle over 12,000 miles during the time it was in his possession. Jidd did not comply with plaintiff's request to unwind the transaction, and BMW subsequently caused the 2010 BMW to be repossessed, sold, and a deficiency be assessed against plaintiff.

¶ 15    Finally, we note that the bystander report indicates that at trial, plaintiff and Jidd stipulated that "the 'losing party' would also have a judgment entered against it as to BMW Financial's Counterclaim."

¶ 16    Following the bench trial the parties filed posttrial memoranda outlining their respective positions. On August 10, 2022, the trial court entered an order in which it found:

> "l. After a two-day bench trial, and after reviewing the parties' post-trial briefs, the Court finds that Defendant Jidd violated Sections 815 ILCS 505/2ZZ (by not paying off the loan on Plaintiff's trade in vehicle within 21 days) and Section 815 ILCS 505/2L (by including the 'as is' provision in the Buyers Guide and thereby making disclosures nonconspicuous as mandated by the Consumer Fraud Act).
>
> 2. The Court finds that a violation of either of these Sections makes the parties' contract voidable, and the Court hereby voids the parties' contract, thereby unwinding the transaction.
>
> 3. The vehicle subject to this litigation has already been returned to Defendant Jidd; judgment is entered against Jidd in the following amounts: Jidd shall return to Plaintiff his down payment of $9,500, his trade-in value of $3,000, his filing and service fees of $388.00 and $60.00, occasioned by Defendant's failure to participate in a binding arbitration."

On September 20, 2022, the trial court entered an order granting judgment against Jidd and in favor of BMW on BMW's counterclaim. On January 26, 2023, the trial court denied Jidd's motion to reconsider.

¶ 17    Both plaintiff and BMW filed petitions for attorney fees. On May 3, 2023, the trial court entered a final order in which it held:

> "Over Jidd Enterprises, LLC's objections, judgment is entered in favor of Plaintiff in the amount of $124,161.47 (consisting of $12,948.00 in damages and $111,213.47 in attorney fees). Over Jidd Enterprises, LLC's objections, judgment is entered in favor of BMW *** in the amount of $71,595.47 (consisting of the deficiency due under the contract of $22,300.01, $12,488.25 in interest, and $36,807.21 in attorney fees)."

Jidd filed a timely notice of appeal on May 23, 2023.

¶ 18     We review a challenge to the trial court's rulings after a bench trial using the manifest-weight-of-the-evidence standard of review. *Kalata v. Anheuser–Bush Companies, Inc*., 144 Ill. 2d 425, 433 (1991). A judgment is against the manifest weight of the evidence only when the opposite conclusion is apparent or when the findings are unreasonable, arbitrary, or not based on the evidence. *Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Limited USA*, 384 Ill. App. 3d 849, 859 (2008). In other words, the " 'trial court's judgment following a bench trial will be upheld if there is any evidence supporting it.' " *Southwest Bank of St. Louis v. Poulokefalos*, 401 Ill. App. 3d 884, 890 (2010) (quoting *Nokomis Quarry Co. v. Dietl*, 333 Ill. App. 3d 480, 484 (2002)).

¶ 19     However, the parties' contentions regarding the relevant provisions of the Act present a question of statutory interpretation, which we review *de novo*. *Millennium Park Joint Venture, LLC v. Houlihan*, 241 Ill. 2d 281, 294 (2010). The rules applicable to this task are well-established and were summarized in *Hendricks v. Board of Trustees of the Police Pension Fund*, 2015 IL App (3d) 140858, ¶ 14:

> "The fundamental rule of statutory interpretation is to ascertain and give effect to the intent of the legislature. [Citation.] The most reliable indicator of that intent is the language of the statute itself. [Citation.] In determining the plain meaning of statutory language, a court will consider the statute in its entirety, the subject the statute addresses,

and the apparent intent of the legislature in enacting the statute. [Citations.] If the statutory language is clear and unambiguous, it must be applied as written, without resorting to further aids of statutory interpretation. [Citation.] A court may not depart from the plain language of the statute and read into it exceptions, limitations, or conditions that are not consistent with the express legislative intent."

¶ 20 Here, Jidd first appeals from the judgment entered against it on plaintiff's claims that Jidd violated specific provisions of section 2 of the Act. Section 2 provides, in relevant part, as follows:

"Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact *** in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2 (West 2018).

¶ 21 When originally enacted, the Act "did not expressly provide a private cause of action for violations of section 2. *** Unlawful business practices were generally prosecuted by the Attorney General, who had the authority to pursue injunctive relief, restitution and civil penalties." *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 148 (2002). However, the legislature subsequently added section 10a of the Act, which provides: "Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper." 815 ILCS 505/10a (West 2018). Section 10a(a) of the Act thus expressly requires proof that a plaintiff suffered "actual damage," as well as proof that the damage occurred "as a result of"

a violation of the Act. *Id.*; *Oliveira*, 201 Ill. 2d at 149. "[T]his language imposes a proximate causation requirement." *Id.*

¶ 22    We first turn to the trial court's finding that Jidd violated section 2ZZ of the Act, as we find this issue to be largely dispositive of this appeal. In relevant part, section 2ZZ provides:

"(a) When a motor vehicle dealer *** enters into a retail transaction where a consumer trades in or sells a vehicle that is subject to a lien, the dealer shall:

(1) within 21 calendar days of the date of sale remit payment to the lien holder to pay off the lien on the traded-in or sold motor vehicle, unless the underlying contract has been rescinded before expiration of 21 calendar days;***

***

(b) A motor vehicle dealer who violates this Section commits an unlawful practice within the meaning of this Act." 815 ILCS 505/2ZZ (West 2018).

¶ 23    Here, it is undisputed that with respect to the 2010 BMW traded-in as part of his purchase of the 2013 BMW, Jidd did not "within 21 calendar days of the date of sale remit payment to the lien holder to pay off the lien on the traded-in or sold motor vehicle." *Id.* The purchase of the 2013 BMW was executed on October 12, 2017, and the 2010 BMW was traded in as part of that transaction on the same day. As such, Jidd was required to pay off the existing lien on the 2010 BMW on or before November 7, 2017. However, it is undisputed that Jidd did not do so until November 21, 2017. Therefore, Jidd violated section 2ZZ and thus committed an unlawful practice within the meaning of the Act. 815 ILCS 505/2ZZ (West 2018).

¶ 24    While Jidd complains that any delay was occasioned not by its own conduct, but by the fact that BMW originally lost the paperwork for the first contract, we note that no such exception is contained in the language of section 2ZZ and reiterate that a court "may not depart from the

plain language of the statute and read into it exceptions, limitations, or conditions that are not consistent with the express legislative intent." *Hendricks*, 2015 IL App (3d) 140858, ¶ 14. Furthermore, Mr. Wessel testified at trial that the finance agreement was " 'mine' (the dealership's) until it was sold to a bank." That sale and assignment did not occur until November 20, 2017, well after Jidd—as the motor vehicle dealer accepting the trade-in vehicle and the holder of the finance contract—was required to pay off the existing lien on the 2010 BMW to comply with section 2ZZ.

¶ 25    Nevertheless, to support his private cause of action plaintiff still had to prove that he suffered "actual damage," as well as proof that the damage occurred "as a result of" this violation of the Act. 815 ILCS 505/10a (West 2018); *Oliveira*, 201 Ill. 2d at 149. Here, plaintiff testified that due to the lien on the 2010 BMW not being timely paid: (1) he was unable to register the license plates transferred from the 2010 BMW to the 2013 BMW in Iowa, and (2) "he began receiving harassing collection phone calls and bills from [BMW]" with late charges. The bystander report also reflects that the trial court's notes from plaintiff's testimony indicated that the failure to timely pay off the lien on the 2010 BMW also resulted in a "detriment" to plaintiff's credit rating.

¶ 26    Then, after Jidd did not respond to a November 26, 2017, demand letter from plaintiff's attorney requesting to cancel the transaction, based, in part, on the failure to timely pay off the lien on the 2010 BMW, plaintiff returned the 2013 BMW to Jidd on November 30, 2017. Plaintiff testified that thereafter he "was without his down payment of $9,500, without his trade-in worth $3,000, [and] suffered a loss of use of the car in the amount of his monthly payment of $795." Plaintiff also noted that he purchased two new tires for the 2013 BMW while he possessed the vehicle, was being threatened with a "$22,000" demand from BMW, and had to pay his filing and service fees to the circuit court with respect to this lawsuit. We conclude that this evidence is

sufficient to meet the "actual damages" requirement of section 10a of the Act. *Poulokefalos*, 401 Ill. App. 3d at 890 (a trial court's judgment following a bench trial will be upheld if there is any evidence supporting it).

¶ 27    We also conclude that that this evidence is sufficient to establish that these damages were proximately caused by Jidd's failure to timely pay off the lien on the 2010 BMW. Proximate cause is defined as " 'any cause which, in natural or probable sequence, produced the injury complained of. It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury.' " *Holton v. Memorial Hospital*, 176 Ill. 2d 95, 133 (1997) (quoting Illinois Pattern Jury Instructions, Civil, No. 15.01 (1995)). Plaintiff's evidence meets this standard where Jidd's violation of section 2ZZ, perhaps not alone but nevertheless in a natural or probable sequence, was one of the causes of plaintiff's damages.

¶ 28    In reaching this conclusion, we reject several arguments raised by Jidd. First, we reject Jidd's contention that: "Plaintiff being 'uncomfortable with being asked to sign three contracts' or 'because his trade-in was not paid off' does not mean that Jidd engaged in any fraudulent, deceptive, or unfair practice. ICFA does not contain any provision for being uncomfortable. No case law interpreting the Act holds that being uncomfortable about something constitutes actual damages." Jidd essentially contends that the trial court improperly found that plaintiff only suffered noneconomic damages and improperly provided plaintiff relief only for such noneconomic damages under the Act. Plaintiff's evidence at trial clearly established some economic and some noneconomic damages, and Illinois law provides that if the plaintiff has suffered an economic loss, noneconomic injuries such as emotional distress, inconvenience, and aggravation are compensable under the Act. See *Morris v. Harvey Cycle & Camper, Inc.*, 392 Ill.

App. 3d 399, 403 (2009); *Roche v. Fireside Chrysler-Plymouth, Mazda, Inc.*, 235 Ill. App. 3d 70, 86 (1992).

¶ 29     Moreover, we reject Jidd's contention that plaintiff's damages resulted not from any violation of section 2ZZ of the Act, but due to plaintiff's failure to mitigate his damages and instead simply abandon the 2013 BMW at Jidd's dealership. The failure to mitigate damages is an affirmative defense that must be pleaded and proved by the defendant. *Boyer v. Buol Properties*, 2014 IL App (1st) 132780, ¶ 67. The record reflects that Jidd never pleaded this affirmative defense in its response to plaintiff's operative complaint.

¶ 30     We also reject Jidd's complaint that the damages ultimately awarded by the trial court bore no proximate relationship to the actual economic damages suffered by plaintiff due to Jidd's violation of section 2ZZ of the Act. Section 10a of the Act specifically provides that with respect to a private cause of action under the Act: "The court, in its discretion may award actual economic damages or *any other relief which the court deems proper.*" (Emphasis added.) 815 ILCS 505/10a (West 2018). Here, the circuit court awarded plaintiff a combination of actual damages in the form of court fees and, effectively, rescission of the parties' contract by returning to plaintiff his downpayment and the value of his trade-in. Recission is properly sought as a remedy under the Act. *Guess v. Brophy*, 164 Ill. App. 3d 75, 80 (1987); *Grimes v. Adlesperger*, 67 Ill. App. 3d 582, 585 (1978).

¶ 31     Having determined that the trial court properly entered judgment in favor of plaintiff on his claim that Jidd violated section 2ZZ of the Act, we need not further consider the parties' contentions regarding the purported violation of section 2L of the Act, or whether Jidd also violated the Act in any way by failing to comply with the arbitration provisions of the parties' agreement.

The evidence of a violation of section 2ZZ and resulting damages are alone sufficient to affirm the trial court's entry of a judgment against Jidd.

¶ 32    We next reject Jidd's assertion that the trial court improperly denied its motion to reconsider. The purpose of a motion to reconsider is to bring to the trial court's attention newly discovered evidence not available at the time of the original hearing, changes in the law, or errors in the court's previous application of existing law. *Stringer v. Packaging Corp. of America*, 351 Ill. App. 3d 1135, 1140 (2004). Generally, the decision to grant or deny a motion to reconsider lies within the trial court's discretion and will not be reversed absent an abuse thereof. *Id*. However, where a motion to reconsider an order granting summary judgment raises the question of whether the trial court erred in its previous application of existing law, our review is *de novo*. *Duresa v. Commonwealth Edison Co*., 348 Ill. App. 3d 90, 97 (2004). Here, a review of Jidd's posttrial memorandum and its motion to reconsider reveal that: (1) many of the arguments raised in the motion to reconsider were previously raised in Jidd's posttrial memorandum and rejected both by the trial court and this court in our discussion above, (2) many of the arguments raised in the motion to reconsider involve Jidd's purported violation of section 2L of the Act, which we have already concluded need not be further considered to affirm the judgment of the trial court, and (3) the claims of purported misapplications of existing law raised in the motion to reconsider were properly rejected by the trial court for the reasons we have already explained above.

¶ 33    Next, we consider and reject Jidd's argument that the trial court improperly denied its request for a setoff on plaintiff's damages for the "excessive number of miles" plaintiff drove the 2013 BMW. First, and Jidd's assertion to the contrary, the record on appeal does not clearly establish that a request for such a setoff was made both at trial and at the hearing on the motion to reconsider. Certainly, no such request was explicitly contained in Jidd's posttrial memorandum or

in its written motion to reconsider.

¶ 34    More importantly, however, "a setoff may refer to a situation when the defendant claims that the *plaintiff* has done something that results in a reduction in the defendant's damages. When a defendant pursues this type of setoff, the claim must be raised in the pleadings." (Emphasis in original.) *Thornton v. Garcini*, 237 Ill. 2d 100, 113 (2010); see also *MidAmerica Bank, FSB v. Charter One Bank, FSB*, 232 Ill. 2d 560, 574-75 (2009) ("A defendant is required to raise a claim for a setoff in the pleadings to give the plaintiff notice and an opportunity to defend against the claim."). Here, the record reflects that no such claim for setoff was raised by Jidd in the pleadings, and we therefore find no possible error in the trial court's failure to award Jidd such a setoff.

¶ 35    Next, we address and reject two arguments raised by Jidd with respect to the judgment entered in favor of BMW. First, Jidd complains that at one point the trial court parroted BMW's counsel and stated that Jidd had passed "bad paper" to BMW. Jidd contends that "bad paper" is "an antiquated term used in the finance world to describe a debt instrument that is at an extremely high risk of default," and that to "the extent the Court's comment on this point was a holding, it was in error."

¶ 36    As an initial matter, the record clearly reflects that the trial court was merely parroting BMW's colloquial language when it made this comment on a single occasion. Moreover, the record also reflects that the judgment in favor of BMW and against Jidd was not entered based upon any finding that Jidd passed "bad paper," but rather on the basis of the parties' "loser pays" stipulation that whichever party "lost" plaintiff's claim against Jidd would have a judgment entered against it in favor of BMW on its counterclaim.

¶ 37    Second, Jidd contends that the trial court erred in awarding BMW damages that included interest at the 11.39% annual percentage rate set forth in the contract executed by plaintiff and Jidd

and assigned to BMW. Jidd contends that this award was improper because the language of the finance agreement executed by plaintiff and Jidd and the assignment agreement between Jidd and BMW is "at most ambiguous" with respect to whether BMW was entitled to recover interest, and even if so, whether interest should be calculated at the 11.39% annual percentage rate set forth in the contract executed by plaintiff and Jidd and assigned to BMW. We disagree.

¶ 38    Where an award of damages is made after a bench trial, the standard of review is whether the trial court's judgment is against the manifest weight of the evidence. *Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA*, 384 Ill.App.3d 849, 859 (2008). A judgment is against the manifest weight of the evidence only if the opposite conclusion is clear or where the trial court's findings appear to be unreasonable, arbitrary, or not based on evidence. *Id*. An award of damages is not against the manifest weight or manifestly erroneous if there is an adequate basis in the record to support the trial court's determination of damages. *Schatz v. Abbott Laboratories, Inc*., 51 Ill.2d 143, 147 (1972); *Aetna Insurance Co. v. Amelio Brothers Meat Co*., 182 Ill. App. 3d 863, 865 (1989).

¶ 39    Here, the assignment agreement between Jidd and BMW specifically stated that Jidd "represents and warrants that *** the motor vehicle described has been delivered to and accepted by [plaintiff.]" That agreement goes on to provide that in the event this representation was false, Jidd "agree[d] to repurchase the within contract for the unpaid balance and *all other indebtedness then due from [Plaintiff] thereon*, together with reasonable attorneys' fees, costs, and expenses incurred by [BMW]." (Emphasis added.)

¶ 40    Furthermore, it must be remembered that BMW's counterclaim against Jidd was a breach of contract claim and asserted that should a judgment be entered "in favor of Mr. Ainsworth on all or part of his causes of action, then [the contract between plaintiff and Jidd that was assigned to

BMW] was not validly entered into, *nor had the Property been accepted by Mr. Ainsworth at the time of the assignment to [BMW]*, and Jidd is therefore in breach of the Contract with [BMW], making it liable to [BMW] for contractual damages." (Emphasis added.) Jidd stipulated at trial that it would have a judgment entered against it and in favor of BMW if the trial court ruled against it on plaintiff's claims, which is exactly what occurred at trial.

¶ 41    As such, Jidd essentially stipulated at trial to a judgment against it on BMW's claim that Jidd falsely represented that plaintiff had accepted the 2013 BMW, and as such Jidd "agree[d] to repurchase the within contract for the unpaid balance and all other indebtedness then due from [Plaintiff] thereon, together with reasonable attorneys' fees, costs, and expenses incurred by [BMW]." On this record, we cannot find fault with the trial court's conclusion that, in addition to the unpaid balance, BMW was entitled to recover interest at the 11.39% annual percentage rate set forth in the contract executed by plaintiff and Jidd and assigned to BMW, where that interest represents "other indebtedness then due from [Plaintiff] thereon." This conclusion is not unreasonable, arbitrary, or not based on evidence, and as such we find that there is an adequate basis in the record to support the trial court's determination of damages.

¶ 42    Finally, we briefly address two remaining issues. First, for the first time in its reply brief Jidd raises an argument that plaintiff "ratified" the contract by driving the 2013 BMW for so many miles while it was in his possession, and thus waived any right to challenge the "voidable" contract. In response, plaintiff filed a motion to strike these arguments as they were not raised either below or in Jidd's opening brief. We previously ordered plaintiff's motion to be taken with the case. We now conclude that these arguments need not be stricken, as we simply refuse to further consider them pursuant to Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) (Points not argued in opening appellate brief "are forfeited and shall not be raised in the reply brief, in oral argument,

or on petition for rehearing.").

¶ 43    Lastly, we note that in a single sentence in the prayer for relief contained in both its opening and reply brief, Jidd asks this court to reverse the order awarding fees and costs to plaintiff and BMW. However, Jidd provides no further support for this contention. Rule 341(h)(7) provides that the appellant's brief shall include an argument containing the appellant's contentions, the reasons therefor, citation of the authorities, and "the pages of the record relied on." *Id.* " 'A reviewing court is entitled to have issues clearly defined with pertinent authority cited and cohesive arguments presented [citation], and it is not a repository into which an appellant may foist the burden of argument and research [citation]; it is neither the function nor the obligation of this court to act as an advocate or search the record for error.' " *People v. Universal Public Transportation, Inc.*, 2012 IL App (1st) 073303–B, ¶ 50 (quoting *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993)). "An issue not clearly defined and sufficiently presented fails to satisfy the requirements of Supreme Court Rule 341(h)(7)" and is, therefore, forfeited. *In re Detention of Lieberman*, 379 Ill. App. 3d 585, 610 (2007). We therefore refuse to further consider this argument on appeal.

¶ 44    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 45    Affirmed.